303 A.D.2d 791 (2003)
755 N.Y.S.2d 763
PAUL WHEELER et al., Appellants-Respondents,
v.
LEBANON VALLEY AUTO RACING CORPORATION et al., Respondents-Appellants.
Appellate Division of the Supreme Court of the State of New York, Third Department.
Decided March 6, 2003.
Crew III, J.P., Spain, Carpinello and Mugglin, JJ., concur.
Rose, J.
This action concerns the impact on its immediate community of the Lebanon Valley Speedway (hereinafter the Speedway), which comprises an oval automobile racing track and a drag strip located in a rural area of Columbia County. Defendants Lebanon Valley Auto Racing Corporation, Shaker Flat Corporation and Howard Commander own the Speedway and operate the oval racetrack. Defendants Phoenix Racing, Ltd., Wraith Automobile Racing, Inc., Vincent Barletta, now deceased, and Joseph Henry entered an 18-year lease to operate the drag strip and made significant upgrades to its facilities in 1994. Plaintiffs, most of whom are part-time residents of properties located within approximately two miles of the Speedway, commenced this action in September 1995 alleging, inter alia, that *792 the Speedway's racing events and activities in preparation for racing have become much noisier and more frequent since 1994, that its activities constitute a public nuisance, and that the appropriate remedy is an injunction reducing the noise levels and limiting the days and hours of its operation.
Supreme Court (Cobb, J.), denied plaintiffs' motion for a preliminary injunction, holding that, inter alia, plaintiffs could prevail on their claim only by showing that the current use of the Speedway, which has been in operation for more than 40 years, is "markedly different from that which has been historically permitted." Eleven months after the conclusion of an 11-day bench trial, Supreme Court (Connor, J.), rendered a decision and order prohibiting races, certain preparatory activities and other events from taking place at the Speedway on Mondays, Tuesdays or Thursdays and directing that noise from all racing related activities not begin prior to 10:00 A.M. or end later than 11:00 P.M. on the days when racing is permitted. However, the court denied plaintiffs' request for a 75-decibel limitation on the permissible sound levels as measured at the Speedway's property lines.
Plaintiffs appeal, contending that by not restricting the level of noise during the Speedway's operation, Supreme Court failed to fully abate the nuisance, and defendants cross-appeal. We now hold that Supreme Court erred in finding a public nuisance and enjoining the Speedway's activities, because plaintiffs failed to show that they suffered a special injury as a result of its noise different than that suffered by the community at large.
A public nuisance "consists of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all * * * in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons" (Copart Indus. v Consolidated Edison Co. of N.Y., 41 NY2d 564, 568 [1977]; see 532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d 280, 292 [2001]; Restatement [Second] of Torts § 821B; R. Abrams and V. Washington, The Misunderstood Law of Public Nuisance: A Comparison with Private Nuisance Twenty Years After Boomer, 54 Albany L Rev 359, 374). Racetracks are among the sources of "[n]oise and other disturbances of the peace in a neighborhood" that have been found to be public nuisances (Hoover v Durkee, 212 AD2d 839, 840 [1995]; see State of New York v Waterloo Stock Car Raceway, 96 Misc 2d 350 [1978]; cf. State of New York v Bridgehampton Rd. Races Corp., 54 AD2d 929 [1976]).
*793 It has long been settled, however, that "[a] public nuisance is actionable by a private persons only if it is shown that the person suffered special injury beyond that suffered by the community at large" (532 Madison Ave. Gourmet Foods v Finlandia Ctr., supra at 292; see Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 334 [1983]; Copart Indus. v Consolidated Edison Co. of N.Y., supra at 568; People v Brooklyn & Queens Tr. Corp., 283 NY 484 [1940]; Francis v Schoellkopf, 53 NY 152; Hoover v Durkee, supra at 840; Leo v General Elec. Co., 145 AD2d 291, 294 [1989]). As a result, where the claimed injury is "common to the entire community," a private right of action is barred (Burns Jackson Miller Summit & Spitzer v Lindner, supra at 334-335; compare Hoover v Durkee, supra [where record on appeal indicates that raceway noise levels caused the plaintiffs to suffer special damages consisting of decreased property values], with Queens County Bus. Alliance v New York Racing Assn., 98 AD2d 743 [1983] [neighboring racetrack caused the plaintiffs to suffer no damages different from Queens County's other residents]). In addition, the Court of Appeals has recently confirmed that the requisite "special" or "peculiar" injury suffered by private persons must be different in kind, and not just degree, from that sustained by the community surrounding the source of the public nuisance (532 Madison Ave. Gourmet Foods v Finlandia Ctr., supra at 294).
Here, the record supports Supreme Court's factual findings that the relevant community consists of those persons residing within a two-mile radius of the Speedway, that all of the plaintiffs had either actual or constructive notice of the Speedway when they acquired their properties and that the Speedway's noises became more frequent and louder after the 1994 improvements to the drag strip. However, plaintiffs' expert testified, and Supreme Court found, that regardless of location, all persons in the affected community would be "similarly impacted" by exposure to "unacceptable" noise levels during the Speedway's activities. This evidence confirmed that every member of the community was exposed to excessive noise from the same source. Thus, for the Speedway's activities to be privately actionable as a public nuisance, it was incumbent on plaintiffs to show an injury other than the annoyance of loud noises.
Despite Supreme Court's conclusion that "interference with a plaintiff's enjoyment of the use of a particular property is sufficient in and of itself to demonstrate special damages, since our law recognizes `every plot of land as unique,'" the record holds no allegation or proof of any unique economic or other *794 tangible injury to plaintiffs' properties. Of the 11 plaintiffs who reside within two miles of the Speedway, two testified in a conclusory manner that the noise had reduced the unspecified values of their homes. Most plaintiffs testified only that the Speedway's noise interfered with their ability to converse, listen to music or television, conduct social activities, and/or sleep at their residences. This deficiency in proof readily distinguishes the present action from Hoover v Durkee (212 AD2d 839 [1995], supra), where the record on appeal indicates that the private plaintiffs demonstrated that the excessive noise emanating from a neighboring racetrack had caused both interference with the use of their properties and substantial decreases in property values. Due to the absence of proof of special injury here, Supreme Court erred in allowing plaintiffs to prosecute this action as one to enjoin a public nuisance.
Also unpersuasive is plaintiffs' contention that the proof at trial nonetheless demonstrates, as Supreme Court found, that the noise generated by the Speedway's activities constitutes a private nuisance. In fashioning a remedy for a private nuisance, New York courts balance the interests of the parties and award compensatory money damages as long as the adverse economic effects of a permanent injunction outweigh the injured parties' losses (see Little Joseph Realty v Town of Babylon, 41 NY2d 738, 744 [1977]; Boomer v Atlantic Cement Co., 26 NY2d 219, 226-228 [1970]; Hohenberg v 77 W. 55th St. Assoc., 90 AD2d 750 [1982]). Moreover, the proper measure of such damages is "the difference between the market value of the property before and after the nuisance" (Kinley v Atlantic Cement Co., 42 AD2d 496, 498 [1973]).
In addition to noting that plaintiffs consistently prosecuted this action as one for public, rather than private, nuisance, we find plaintiffs' characterization of their action as one for private nuisance to be unavailing because they wholly failed to present evidence from which Supreme Court could either calculate their economic damages or draw the conclusion that their loss outweighed the adverse economic impact on defendant of a permanent injunction. Although Supreme Court noted that $2,100,000 had been invested in improvements to the drag strip alone, there is no evidence or finding of the market values of plaintiffs' properties either with or without the increased noise produced by the Speedway since 1994. Thus, even if the evidence were sufficient to establish a private nuisance, there still would be no basis for Supreme Court to either issue an injunction or award money damages.
*795 Ordered that the order is reversed, on the law, without costs, and complaint dismissed.