Davies v S.A. Dunn & Co., LLC (2021 NY Slip Op 05751)





Davies v S.A. Dunn & Co., LLC


2021 NY Slip Op 05751


Decided on October 21, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 21, 2021

530994 531613

[*1]Brenda Davies et al., on Behalf of Themselves and All Others Similarly Situated, Respondents,
v
S.A. Dunn & Company, LLC, Appellant.

Calendar Date:August 19, 2021

Before: Egan Jr., J.P., Lynch, Clark, Aarons and Reynolds Fitzgerald, JJ.


Beveridge & Diamond, PC, New York City (Michael G. Murphy of counsel), for appellant.
Michaels & Smolak, PC, Auburn (Matthew Z. Robb of Liddle & Dubin, PC, Detroit, Michigan, of counsel, admitted pro hac vice), for respondents.
Hunton Andrews Kurth LLP, New York City (Jennifer L. Bloom of counsel), for Chamber of Commerce of the United States of America, amicus curiae.
Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, White Plains (Robert A. Spolzino of counsel), for National Waste & Recycling Association, amicus curiae.


Lynch, J.
Appeals (1) from that part of an order of the Supreme Court (McGrath, J.), entered December 16, 2019 in Rensselaer County, which denied defendant's motion to dismiss the negligence cause of action and the class allegations in the complaint, and (2) from an order of said court, entered June 11, 2020 in Rensselaer County, which denied defendant's motion to dismiss the public nuisance cause of action in the amended complaint.
Defendant operates a landfill in the City of Rensselaer, Rensselaer County. Plaintiffs — residents of property in the City of Rensselaer — commenced this action on behalf of themselves and "[a]ll owner[s]/occupants and renters of residential property residing within [1.5] miles of the landfill's property boundary," asserting causes of action for public nuisance and negligence, among other things, based upon defendant's alleged failure to contain noxious odors emanating from the landfill. In lieu of serving an answer, defendant moved for, among other things, dismissal of the complaint under CPLR 3211 (a) (7). In a December 2019 order, Supreme Court, as relevant here, granted that part of the motion seeking dismissal of the public nuisance claim — finding that the complaint "d[id] not allege facts that the harm suffered by plaintiffs as a result of the odors was any different from that experienced by other members of the community" — and denied that part of the motion seeking dismissal of the negligence claim, concluding that the complaint alleged legally cognizable stigma damages.[FN1]
Plaintiffs thereafter filed an amended complaint and defendant moved to dismiss the public nuisance claim asserted therein, contending that plaintiffs had not remedied the pleading deficiencies. As relevant here, the amended complaint alleged that the noxious odors had "interfered with the exercise of the general public's rights to breath clean and/or uncontaminated air." It further alleged that plaintiffs and the putative class members had "suffered a discrete violation of their property rights, separate and apart from the interference with the right(s) common to the general public" insofar as the odors were substantially interfering with the "use and enjoyment of their properties," and had resulted in a diminution in their property values. Distinguishing such harm from the injuries suffered by other "people who live in the class area but are not members of the [c]lass," plaintiffs noted that the odors permeate the air of local schools and also affect "guests, lodgers and minor children" in ways that do not affect their property rights. In a June 2020 order, Supreme Court denied defendant's motion to dismiss the public nuisance claim in the amended complaint, finding that plaintiffs had cured the pleading defects. These appeals by defendant ensued.
Defendant argues that Supreme Court erred in permitting the public nuisance claim to proceed on the merits because plaintiffs did not assert a special injury that would afford them standing, [*2]as private individuals, to recover damages for a public nuisance. We agree. When assessing a motion to dismiss for failure to state a cause of action (see CPLR 3211 [a] [7]), this Court "affords the complaint a liberal construction, accepts the facts alleged as true, accords the plaintiff[s] the benefit of every favorable inference and determines only whether the alleged facts fit within any cognizable legal theory" (Leonard v Cummins, 196 AD3d 886, 888 [2021] [internal quotation marks, brackets and citations omitted]; see Doe v Bloomberg, L.P., 36 NY3d 450, 454 [2021]). Even under this liberal standard, dismissal is warranted "if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc., 37 NY3d 169, 175 [2021] [internal quotation marks and citation omitted]). The relevant inquiry is whether the plaintiffs "have a cause of action and not whether one has been stated" (Alaimo v Town of Fort Ann, 63 AD3d 1481, 1482 [2009] [internal quotation marks, brackets and citations omitted]; see Maddicks v Big City Props., LLC, 34 NY3d 116, 123 [2019]).
Unlike a private nuisance, which "threatens one person or . . . relatively few" (Copart Indus. v Consolidated Edison Co. of N.Y., 41 NY2d 564, 568 [1977]), a public nuisance consists of "a substantial interference with the exercise of a common right of the public, thereby offending public morals, interfering with the use by the public of a public place or endangering or injuring the property, health, safety or comfort of a considerable number of persons" (532 Madison Ave. Gourmet Foods v Findlandia Ctr., 96 NY2d 280, 292 [2001]; see Duffy v Baldwin, 183 AD3d 1053, 1054-1055 [2020]). A public nuisance is "an offense against the [s]tate and is [generally] subject to abatement or prosecution on application of the proper governmental agency" (Copart Indus. v Consolidated Edison Co. of N.Y., 41 NY2d at 568; see Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 334 [1983]; State of New York v Schenectady Chems., 103 AD2d 33, 37 [1984]). Government enforcement is particularly apt for such a highly regulated activity as operating a landfill (see ECL 27-0703 [2] [iv]; 6 NYCRR part 360; see also State of New York v Ferro, 189 AD2d 1018, 1021 [1993]). "A public nuisance is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large" (532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d at 292 [citations omitted]; accord Duffy v Baldwin, 183 AD3d at 1055). The injury sustained must be "different in kind, not merely in degree" (532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d at 294; see Wakeman v Wilbur, 147 NY 657, 663 [1895] [the injury must be "private and peculiar" to the plaintiff]). The utility in this limitation is to "guard[] against the multiplicity of lawsuits that [*3]would follow if everyone were permitted to seek redress for a wrong common to the public" (532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d at 292).
There is no dispute that noxious odors emanating from the landfill may qualify as a public nuisance insofar as they interfere with a common right of the public to clean and fresh air. The dispute centers on whether plaintiffs have sufficiently alleged a special injury different from the "community at large" — an inquiry that necessarily requires a determination of the relevant scope of that community. Plaintiffs argue that, to define the relevant community, the injuries asserted in the amended complaint must be assessed against the injuries sustained by all members of the public who come into contact with the noxious odors. Using this framework, plaintiffs reason that, because individuals who encounter the odors at work, school and through recreation do not all suffer impacts to their properties therefrom, plaintiffs have asserted a special injury that is different in kind from the general public. Defendant counters that the meaning of "community at large" is not so expansive and, instead, must be framed by the injuries alleged in the amended complaint. To that end, because the amended complaint alleges harm to property rights, defendant asserts that the injuries suffered by plaintiffs and the putative class members must be gauged against those endured by other nearby property owners and renters. The reasoning follows that, since plaintiffs and the putative class members have suffered the same common harm as other nearby property inhabitants, no special injury has been shown.
Both parties' positions find support in case law. As noted by plaintiffs, the Third Circuit in Baptiste v Bethlehem Landfill Company (965 F3d 214, 221 [3d Cir 2020]) recently held that a claim for public nuisance was actionable by a class of homeowners and renters to abate noxious odors emanating from a Pennsylvania landfill. Reversing the district court, the Third Circuit held that "the [d]istrict [c]ourt should have compared the injuries suffered by [the] putative class members as homeowner-occupants and renters with the harm shared by all community members including nonresidents such as visitors and commuters" (id. at 222). Several federal district courts have also used an expansive definition of "community at large" when assessing the viability of public nuisance claims brought by private individuals (see e.g. Agudelo v Sprague Operating Resources, LLC, ___ F Supp 3d ___, ___, 2021 WL 1109288, *3 [D RI 2021]; Sines v Darling Ingredients Inc., 2020 WL 5015488, *2 [D NJ 2020]; Beck v Stony Hollow Landfill, Inc., 2017 WL 1551216, *4 [SD Ohio 2017]), including federal district courts in New York (see Fresh Air for the Eastside, Inc. v Waste Management of New York, LLC, 405 F Supp 3d 408, 443-444 [WD NY 2019]; Cangemi v United States, 939 F Supp 2d 188, 206 [ED NY 2013]; Iannucci v City of New York, 2006 WL 1026432[*4], *4 [ED NY 2006]).
The New York Court of Appeals, however, has taken a different, more limited approach. In 532 Madison Ave. Gourmet Foods — which heard three cases together from the First Department — the Court of Appeals held that private business owners and residents could not maintain a cause of action for public nuisance to recover for economic losses incurred as a result of New York City street closures caused by a partial building collapse (532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d at 293).[FN2] Finding that the plaintiffs did not assert a special injury beyond that of the community at large, the Court emphasized that "every person who maintained a business, profession or residence in the heavily populated areas of Times Square and Madison Avenue was exposed to similar economic loss during the closure periods" (id. at 294). Notably, in assessing the "community at large," the Court of Appeals did not compare the economic loss suffered by the plaintiffs with the harms sustained by every individual who came into contact with the street closures — a framework that had been used by Justice Ellerin in her majority opinion at the Appellate Division in 5th Ave. Chocolatiere v 540 Acquisition Co. (272 AD2d 23, 32 [2000], revd 96 NY2d 280 [2001]) and which plaintiffs advocate here.[FN3] Rather, the Court of Appeals limited its inquiry to a comparison of the economic injuries allegedly incurred by the plaintiffs with other nearby business owners, merchants and neighborhood residents, concluding that each "was exposed to similar economic loss during the closure periods," and, therefore, the injuries were similar in kind (532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d at 294). The Court further stated that, "[w]hen business interference and ensuing pecuniary damage is so general and widespread as to affect a whole community, or a very wide area within it, the line is drawn" (id. at 293 [internal quotation marks and citation omitted]).
This is the same approach that the Court of Appeals previously used in Burns Jackson, wherein it held that a private action for a public nuisance could not be maintained by two plaintiff law firms to recover for damages incurred due to a New York City transit strike insofar as "every person, firm and corporation conducting his or its business or profession in the City of New York" suffered the same economic injuries (Burns Jackson Miller Summit & Spitzer v Linder, 59 NY2d at 334-335). This Court, as well, has applied the more limited approach used in 532 Madison Ave. Gourmet Foods to define the relevant community, holding that a group of plaintiffs — who were residents of properties within two miles of a speedway — could not maintain an action for public nuisance to abate the noise generated therefrom since the injuries alleged were the same as those suffered by the "relevant" community at large, which "consist[ed] of those persons residing within a two-mile radius of the [s]peedway" (Wheeler v [*5]Lebanon Val. Auto Racing Corp., 303 AD2d 791, 793 [2003], lv denied 100 NY2d 507 [2003]; compare Hoover v Durkee, 212 AD2d 839, 840-841 [1995]). We find Wheeler particularly relevant, for noise and smell would permeate the senses of anyone within close proximity of a speedway or a landfill, and yet the "relevant" community was limited to residents and not the general public.
Where, as here, there is a conflict between the decisional law of the Court of Appeals and that of the lower and intermediate federal courts, the ruling of the Court of Appeals controls (see Towle v Forney, 14 NY 423, 428 [1856]; People v Jackson, 46 AD3d 1110, 1111 [2007], lv denied 10 NY3d 766 [2008]). Unlike the commercial fishers in Leo v General Elec. Co. (145 AD2d 291, 294 [1989]) — who had standing to litigate a private action for a public nuisance insofar as they suffered a loss of livelihood from the pollution of the Hudson River that "was not suffered by every person who fished the Hudson" (532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d at 294) —plaintiffs here have not asserted an injury that is different in kind from the relevant community at large, which, in our view, consists of the other homeowners and renters impacted by the landfill's odors (see Wheeler v Lebanon Valley Auto Racing Corp., 303 AD2d at 793-794; see also Concerned Citizens of Cedar Hgts.-Woodchuck Hill Rd. v DeWitt Fish & Game Club, 302 AD2d 938, 939 [2003] [residents of property within close proximity of a shooting range did not have standing to bring a public nuisance claim related to the noise associated therewith because they did not allege an injury that was different in kind from the community at large — i.e., the "other residents" in the community (emphasis added)], lv denied 100 NY2d 502 [2003]; compare Booth v Hanson Aggregates N.Y., Inc., 16 AD3d 1137, 1138 [2005] [residents and owners of properties who sustained a loss of their water supply when the defendant's operation of a quarry caused their wells to go dry alleged an injury that was different in kind from other "property owners in the community who ha(d) a public supply of water" (emphasis added)]).[FN4]
In the amended complaint, plaintiffs assert that the noxious odors emanating from the landfill have interfered with their ability to use and enjoy their properties and have resulted in a diminution in their property values. This alleged harm is essentially the same for all of the residents in the nearby vicinity of the landfill — i.e., the community at large (see Allen v General Elec. Co., 2003 NY Slip Op 51345[U], *8 [Sup Ct, Monroe County 2003], affd for reasons stated below 16 AD3d 1095 [2005], lv dismissed 5 NY3d 783 [2005]). Even when construing the complaint liberally and according plaintiffs the benefit of every favorable inference, as required, we agree with defendant that plaintiffs may not maintain a private action for a public nuisance.
With respect to the negligence claim, plaintiffs have not pleaded a [*6]legally cognizable injury recognized in tort law. To recover in negligence, a plaintiff must sustain either physical injury or property damage resulting from the defendant's alleged negligent conduct (see Caronia v Philip Morris USA, Inc., 22 NY3d 439, 446-447 [2013]; 532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d at 291-292). Economic loss alone will not suffice (see 532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d at 291-292). This limitation "serves a number of important purposes: it defines the class of persons who actually possess a cause of action, provides a basis for the factfinder to determine whether a litigant actually possesses a claim, and protects court dockets from being clogged with frivolous and unfounded claims" (Caronia v Philip Morris USA, Inc., 22 NY3d at 446).
Although defendant undoubtedly owes surrounding property owners a duty of care to avoid injuring them (see 532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d at 290), the question is whether plaintiffs sustained the required injury. Here, plaintiffs allege that the noxious odors have physically "invade[d]" their properties, substantially interfering with their use and enjoyment thereof and diminishing their property values. Unlike similar water contamination cases (see Burdick v Tonoga, Inc., 191 AD3d 1220, 1224 [2021]; Ivory v International Bus. Machines Corp., 116 AD3d 121, 127 [2014], lv denied 23 NY3d 903 [2014]; Baker v Saint-Gobain Performance Plastics Corp., 232 F Supp 3d 233, 246 [ND NY 2017], affd in part and dismissed in part 959 F 3d 70 [2020]), the noxious odors at issue are transient in nature and do not have a continuing physical presence. Moreover, plaintiffs have not alleged any tangible property damage or physical injury resulting from exposure to the odors. Likewise, the economic loss resulting from the diminution of plaintiffs' property values is not, standing alone, sufficient to sustain a negligence claim under New York law (see Caronia v Philip Morris USA, Inc., 22 NY3d at 447; 532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d at 291-292).
For the foregoing reasons, we conclude that the public nuisance and negligence claims must be dismissed. In so finding, we are not minimizing the significance of plaintiffs' complaint as to the impact of noxious odors on a property owner's ability to use and enjoy his or her property, but conclude that the available remedy must be through effective governmental compliance and enforcement measures.[FN5]
Egan Jr., J.P., Clark and Reynolds Fitzgerald, JJ., concur.
Aarons, J. (dissenting).
Because I believe that plaintiffs adequately stated causes of action for negligence and public nuisance, I respectfully dissent.
As to the negligence cause of action, I disagree with the majority's determination that plaintiffs did not allege a legally cognizable injury. Defendant characterizes plaintiffs' negligence claim as being based upon a fleeting condition or transient odors that [*7]last only for a few moments. In the complaint, however, plaintiffs alleged that the deposited materials in the landfill subsequently "decompose[d] and generate[d] . . . landfill gas, an odorous and offensive byproduct of decomposition which generally consists of hydrogen sulfide, methane, carbon dioxide[] and various other compounds." Additionally, according to the complaint, more than 150 households have contacted plaintiffs' counsel about the odors emanating from the landfill. Plaintiffs further alleged that defendant negligently operated and maintained the landfill and, as a consequence of such negligence, their respective properties, "on occasions too numerous to mention, ha[ve] been invaded by noxious odors." Furthermore, contrary to defendant's position, plaintiffs did not merely allege economic loss. Although the complaint did allege decreased property values, it also alleged damage to plaintiffs' respective properties. As such, liberally construing the allegations in the complaint and according plaintiffs the benefit of every possible inference, plaintiffs sufficiently alleged a negligence cause of action (see Alaimo v Town of Fort Ann, 63 AD3d 1481, 1483-1484 [2009]; Storch v Town of Cornwall, 294 AD2d 426, 427 [2002]; see generally Leon v Martinez, 84 NY2d 83 [1994]).
Regarding the public nuisance claim, such claim "is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large" (532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d 280, 292 [2001]; see Hoover v Durkee, 212 AD2d 839, 840 [1995]; Graceland Corp. v Consolidated Laundries Corp., 7 AD2d 89, 91 [1958], affd 6 NY2d 900 [1959]). The alleged injuries sustained by a private person asserting a public nuisance claim must be different in kind, and not in degree, from those injuries sustained by the community at large (see 532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d at 293-294). In the amended complaint, plaintiffs alleged various factual instances of damages suffered by the community at large: individuals reporting noxious odors as interfering with their rights in streets, parks, schools, a cemetery and shopping centers; an agency requiring the construction of a barrier between the landfill and a school because of the odors impacting the school; people refraining from going outside in order to shop, dine or walk; and the negative effects on local air quality.
As particular to them, however, plaintiffs alleged in the amended complaint that they live within 1.5 miles of defendant's landfill. Plaintiffs further alleged that the noxious fumes have impacted the use and enjoyment of their homes, caused property damage and diminished the property values of their homes as a consequence of the property damage. The injuries allegedly suffered by plaintiffs as part of their public nuisance cause of action relate to their homes and their use thereof. Moreover, these injuries are particular [*8]to them and are separate and distinct from those injuries allegedly suffered by the community at large (see Booth v Hanson Aggregates N.Y., Inc., 16 AD3d 1137, 1138 [2005]; see also Fresh Air for the Eastside, Inc. v Waste Mgt. of N.Y., L.L.C., 405 F Supp 3d 408, 443-444 [WD NY 2019]; Restatement [Second] of Torts § 821C, Comment d).[FN6] Construing these allegations liberally and accepting them as true, plaintiffs, in my view, sufficiently alleged a special injury in order to maintain their public nuisance claim (see Kavanagh v Barber, 131 NY 211, 214-215 [1892]; Callanan v Gilman, 107 NY 360, 370-371 [1887]; Matter of Agoglia v Benepe, 84 AD3d 1072, 1077 [2011]; cf. Wheeler v Lebanon Val. Auto Racing Corp., 303 AD2d 791, 793 [2003], lv denied 100 NY2d 507 [2003]; compare Duffy v Baldwin, 183 AD3d 1053, 1055 [2020]).
The parties further dispute what constitutes the community at large. In 1983, the Court of Appeals held that "[w]hen the injury claimed to be peculiar is of the same kind suffered by all who are affected, when it is common to the entire community, or[] . . . it becomes so general and widespread as to affect a whole community, the injury is not peculiar and the action cannot be maintained" (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 334-335 [1983] [internal quotation marks and citations omitted]). The Court of Appeals later explained that when the alleged injuries are "so general and widespread as to affect a whole community, or a very wide area within it, the line is drawn" (532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d at 293 [internal quotation marks and citation omitted]).
The concept of the community at large does not appear to be subject to any concrete constructs and where "the line is drawn" (id. [internal quotation marks and citation omitted]) varies in each particular case. Geography has sometimes been a defining characteristic of the community at large — i.e., the New York City metropolitan area (see e.g. Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d at 334), individuals and businesses in a particular neighborhood of New York City (see e.g. 532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d at 286, 293) or residents living within a two-mile radius of a raceway (see e.g. Wheeler v Lebanon Val. Auto Racing Corp., 303 AD2d at 793).[FN7] The community at large can be the public who use the waters in the areas of the lower Hudson River or western Long Island (see e.g. Leo v General Elec. Co., 145 AD2d 291, 293-294 [1989]), the public who utilize a public road by a golf course (see e.g. Gellman v Seawane Golf & Country Club, Inc., 24 AD3d 415, 418 [2005]), the public who drive by a residential driveway (see e.g. Duffy v Baldwin, 183 AD3d at 1054-1055) or those residents who used a public water supply (see e.g. Booth v Hanson Aggregates N.Y., Inc., 16 AD3d at 1138).
Defendant posits that the community at large here refers to the property owners and renters living within the 1.5-mile [*9]area of the landfill and, because everyone in that area sustained the same injury, the public nuisance claim fails. Had plaintiffs limited their allegations in the amended complaint to how the noxious odors affected such property owners and renters, defendant's argument would be on firm footing. The amended complaint, however, raised allegations that were not limited to the proposed class area and were not limited to economic damage. As discussed, plaintiffs alleged that the noxious fumes reached an area beyond the proposed class area and alleged how area residents, guests or other individuals in the vicinity of the landfill were harmed. As also discussed, plaintiffs alleged that the noxious fumes caused property damage, diminution in property values and lack of use and enjoyment of their homes — i.e., injuries that were particular to them and the proposed class and not suffered by others in the community. Affording a liberal construction to plaintiffs' allegations, Supreme Court did not err in denying defendant's motion seeking dismissal of the public nuisance cause of action asserted in the amended complaint.
ORDERED that the order entered December 16, 2019 is modified, on the law, with costs to defendant, by reversing so much thereof as denied defendant's motion to dismiss; motion granted in its entirety; and, as so modified, affirmed.
ORDERED that the order entered June 11, 2020 is reversed, on the law, with costs, and amended complaint dismissed.



Footnotes

Footnote 1: The public nuisance claim was dismissed without prejudice.

Footnote 2: 532 Madison Ave. Gourmet Foods was decided in the context of pre-answer motions to dismiss the complaints for failure to state a cause of action.

Footnote 3: 5th Ave. Chocolatiere was one of the cases heard by the Court of Appeals in 532 Madison Ave. Gourmet Foods and Justice Ellerin's decision was reversed by the Court of Appeals.

Footnote 4: Contrary to plaintiffs' contention, this framework does not inherently "nullify the public nuisance cause of action." Even under this more tailored approach, the commercial fishers in Leo v General Elec. Co. (145 AD2d at 294) were able to show a special injury that was different from the community at large — i.e., every person who fished in the Hudson River — insofar as they incurred business losses that recreational fishers did not.

Footnote 5: Defendant's appeal from that part of the December 2019 order as denied dismissal of the class allegations is academic in light of our determination.

Footnote 6: In Fresh Air for the Eastside, Inc. v Waste Mgt. of N.Y., L.L.C. (405 F Supp 3d 408, 445 [WD NY 2019]), the federal court recognized the law of public nuisance as stated in 532 Madison Ave. Gourmet Foods, Inc. v Finlandia Ctr. (96 NY2d at 293) but found it to be factually distinguishable.

Footnote 7: Of note, in Wheeler v Lebanon Val. Auto Racing Corp. (supra), the plaintiffs alleged that noise from a raceway constituted a public nuisance. The complaint was dismissed following a trial "[d]ue to the absence of proof of [a] special injury" because 2 of the 11 plaintiffs testified "in a conclusory manner that the noise had reduced the unspecified values of their homes" (Wheeler v Lebanon Val. Auto Racing Corp. (303 AD2d at 794). As mentioned, at the pleading stage here, the allegations of property damage and diminished property values must be accepted as true (see generally Leon v Martinez, 84 NY2d 83 [1994]).